CLOTILDE SANTIAGO RIVERA, Plaintiff and Appellant, *v.* TERESA ENRIQUETA SANTIAGO Y OPPENHEIMER, Defendant and Appellee.

No. 4224. Argued May 8, 1928.—Decided May 29, 1929.

*Tous Soto & Zapater* for the appellant. *Francisco Parra Capó* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Isabel Oppenheimer de Santiago leased a property in the municipal district of Santa Isabel for ten years at a rent of four thousand dollars annually and to that effect executed a public deed containing, among others, the following conditions:

"Third. The lessee binds herself, and it is so stipulated, to pay on the corresponding dates the taxes which are at present assessed

on the properties both real and personal and any future taxes that may be assessed for any purpose not only by virtue of the law providing for irrigation taxes but also those which at any time and for any reason may be assessed and levied by the insular, federal or municipal government where the said property is located; by the school board or by any other board clothed with authority to assess and levy taxes under any name and imposed either on the property or its products or in any manner.

"Sixth. At the termination of the present contract all the improvements made on the property shall be for the benefit of the lessor, such as water distributing stations and accessories, fences or any other kind of improvement, except those stipulated in the preceding clause, without any compensation, as well as the existing plantations, whether or not the crops have been gathered, except in the case of cane for the gathering of which the lessee shall be granted the necessary time, which shall be in the present case between December, 1925, the date of the termination of the contract, and July of the following year inclusive; to which effect the lessee shall pay proportionately rent for the time during which the land has been occupied; but she shall gradually deliver the property as it is being cleared and without this being construed as an extension of the contract, although it must be understood that the water taken from the irrigation service during the delivery of the land at the termination of the contract shall be paid by the lessor proportionately to the land delivered, it being the duty of the lessor to pay the amount thereof to the Government, corporation or person entitled to make the collection.''

Isabel Oppenheimer died while the contract was in force and was succeeded by her minor daughter, defendant Teresa Enriqueta Santiago y Oppenheimer, who continued through her guardian to exercise the rights and perform the duties arising from the lease contract. The contract expired on December 1, 1925, and the harvesting of the sugar cane was continued, in accordance with the stipulation of the sixth clause, until March 31, 1926, when the property was finally delivered.

The lessee, by her guardian, presented to the lessor a statement of account showing a balance in favor of the lessor of $1,108.59.

Some differences arose between the contracting parties because of the refusal of the lessor to deliver to the lessee a written acknowledgment that the property had been received satisfactorily together with payment by the lessee to the lessor of the balance due, and by reason of the request of the lessee that the statement rendered by her be modified so as to charge to the account of the lessor a certain sum paid by her as irrigation taxes when the fact was that she had not received the water to which the payment of the taxes gave her a right.

As the said differences could not be settled privately the lessor brought this action to recover $1,108.59 with interest and costs. The defendant answered that she owed and had to pay only $594.54 without interest, and that the costs should be imposed upon the plaintiff.

The case went to trial and after hearing a large amount of oral and documentary evidence the court rendered judgment in favor of the defendant, without special imposition of costs.

The plaintiff appealed to this court and assigned in his brief the commission of five errors which he argues extensively and carefully.

In our opinion, as contended by the appellee in her brief, only two questions are involved in the appeal, as follows:

1. Had the defendant a right, on delivering the property, to be reimbursed for the amount paid in advance to the irrigation service for water which she had not received?

2. Is the manner in which the defendant asserts her alleged right in the answer acceptable, or should she have established it by means of a counter-claim?

Let us study the first. The leased property is included within the irrigation district of the south coast of the Island. Under the law there is assigned to it a volume of water for which the land-holder must pay a fixed tax for the purpose of covering the principal and interest of the bonds issued for the construction of the irrigation system and the expenses

for its working and maintenance. The irrigation service of the south coast is a government enterprise governed by the laws of the Legislative Assembly of Porto Rico.

The payment of the said tax must be made semi-annually in advance and when dry weather or any other cause prevents the accumulation of sufficient water in the reservoirs or dams to supply the amount assigned to each property the irrigation service does not refund the sum collected in advance, but, as stated by the appellee in her brief, "opens a credit in favor of the property for the water not delivered, which credit is good for a year. If there is sufficient water during that year, the distribution of the current year is added to by a proportionate distribution of the water not distributed during the preceding year."

In accordance with the regulations and the law and with the third clause of the contract, the lessee paid the water tax in advance at the proper time.

When the time came for delivery in the second semester of 1925 and the first of 1926 the irrigation service gave notice that the drought prevented it from complying fully and that it had opened a credit for the amount of the deficiency.

That was known perfectly by the lessee and yet she did not include the deduction in her first statement rendered to the lessor. She says in her brief that she proceeded in that manner because she believed, as do many land owners, that she could dispose of the water at her discretion and so sell it to the Central Aguirre which was the future lessee of the farm; and that she tried to sell it, but when Mr. Lucchetti ascertained that the water credit belonged to the property and not to him she thought that the owner of the property should pay it and the second accounting arose.

If in order to adjust the conflict the third clause of the contract is applied, as we think it should be, we would agree entirely with the reasoning of the plaintiff, because by virtue of it the defendant agreed to pay the taxes on the leased property on the corresponding dates and we have seen al-

ready that the corresponding date in the case of water taxes was semi-annually in advance. Witness Lucchetti testified as follows:

"Q.—When is the water tax paid?

"A.—It is paid every semester; within the first sixty days of each semester.

"Q.—The tax is due on July and on January 1, but there is a sixty days grace?

"A.—Sixty days."

The defendant maintains that the contract expired on December 1, 1925, and therefore that no application can be made of its third clause and that the relations between the parties must be governed by the sixth clause which was agreed to exclusively for the harvesting of the cane crop after the expiration of the contract.

The defendant failed to receive water not only during the period of her occupation of the property or certain parts of it after the expiration of the contract, but also during the months of August, September, October and November, 1925, when the contract was in full force. We shall refer again to the testimony of Lucchetti, as follows:

"Q.—And those deficits of 169.98 acre feet corresponding to the tract of the Heirs of Florencio Santiago, to what months and years do they correspond?

"A.—They correspond to the months of August, September, October, November and December, 1925, and February and March, 1926."

In this respect and going into the very core of the question, the appellant says in his brief:

"We wish to insist that this discussion is not about the payment by the heirs of Florencio Santiago to the minor for the water taken from irrigation service corresponding to the leased lands which were gradually being delivered by the said lessee to the lessor as they became cleared of the cane planted thereon. This water which was received by the heirs of Florencio Santiago and stipulated in the contract (clause 6) to be paid by the latter, was paid by the said heirs, as it was charged by Oppenheimer in the

former liquidation against the account of Santiago (first liquidation) said tax amounting to $677.03.

"The discrepancy is in the water tax paid by Oppenheimer at the rate of $499.20 corresponding to the land of the heirs of Florencio Santiago during the lease, said tract not having received the water allotted to it owing to deficiency in the irrigation service.

"We ask what would have happened if it had received it during the month in which it should have received it but there was a deficiency, from August to December, 1925, and January, 1926? That it would have been used by the lessee on the leased lands, since she did not begin to deliver them until February 18, 1926. And if she was entitled to receive the water, is not this the best proof that it was incumbent on her to pay the tax?"

Although in reality the sixth clause was inserted to cover a transitory situation, it can not be disconnected entirely from the other clauses of the contract, as said by the appellee. Even construing it alone, the statement of the appellant in his brief shows that the said clause was applied reasonably.

We think that the defendant is not entitled to anything by reason of the water paid for and not received before December 1, 1925, and we believe also that if the defendant decided to pay the tax corresponding to the first semester of 1926, although really the contract had already expired and she only occupied the land from which the cane crop had not been harvested, the same rule should be applied.

At any rate, it being shown by the evidence that although delivery was being made to the new lessee of the water due, it had not been delivered on the date of the answer or even at the time of the trial and as the compromise was for only one year, which perhaps has elapsed without such delivery, the defendant has not proved that anybody has received in full that for which she paid and did not receive.

Perhaps, as the appellant contends in his brief, the defendant may have some equitable right to collect the sum paid for the water from the new lessee who, as shown by the evidence is being benefited by it, but not from the owner of the property.

It was stipulated in the contract that the lessee should pay the taxes on the corresponding dates. She paid within the first sixty days those for the last semester of 1925 and that was merely to comply with the contract. It is a fact that she continued for her own convenience in possession of all or a part of the leased lands until the last day of March, 1926, and voluntarily paid within the first sixty days for the first semester of that year. She herself construed the contract in that way and ratified her construction in the first accounting made by her and delivered to the lessor. And her construction seems more logical in view of the stipulations with respect to improvements. The water distributing stations that may have been erected by the lessee as well as the credit for water not delivered and valid for one year were thus left for the benefit of the lessor.

The first of the questions involved having been decided in the negative, it is unnecessary to consider the second.

The judgment appealed from must be reversed and substituted by another sustaining the complaint, without special imposition of costs.